J-S55030-18

2019 PA Super 59

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PRINCE ISAAC | |
| Appellant | No. 389 EDA 2018 |

Appeal from the PCRA Order Entered December 21, 2017
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0002120-2007

BEFORE:  OLSON, STABILE, JJ., and FORD ELLIOTT, P.J.E.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 26, 2019**

Appellant, Prince Isaac, appeals from the December 21, 2017 order denying relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  We affirm.

Appellant represented himself at trial after a defective waiver-of-counsel colloquy—the trial court never apprised Appellant of the elements of the charged offenses.[1]  Appointed direct appeal counsel did not raise this issue. On collateral review, Appellant claimed direct appeal counsel rendered

---

[1] "To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge […] shall elicit […] that the defendant understands the nature of the charges against the defendant and the elements of each of those charges[.]"  Pa.R.Crim.P. 121(A)(2)(b).

ineffective assistance. The PCRA court originally denied relief, but a three-judge panel of this Court reversed, concluding that the defective waiver colloquy was an issue of arguable merit.[2] We remanded to the PCRA court for an assessment of counsel's strategy and the prejudice, if any, to Appellant. The PCRA court once again denied relief, and this timely appeal followed.

The prior panel quoted the underlying facts:

> [Appellant] and his brother and co-conspirator, Shamek Hynson [(Hynson)], had a powerful motive to kill the victim, Omar Reid [(the victim)], on October 18, 2004. The murder was an act of retaliation against [the victim] for an incident involving another one of their brothers—Ramek Neal—that took place nearly one year earlier. On November 5, 2003, at approximately 10:30 p.m., Neal and another individual broke into [the victim's] apartment at 416 Victoria Drive, in the Regency Park complex located in Coatesville, Chester County, Pennsylvania. Neal brandished a pistol while demanding [the victim's] property. [The victim] fought back and in self-defense shot Neal, leaving Neal paralyzed from the neck down. This November 2003 incident was the subject of subsequent family meetings attended by both [Appellant] and Hynson.
>
> On October 18, 2004, at approximately 11:00 p.m., [Appellant] drove Hynson to [the victim's] apartment at 416 Victoria Drive in a Kia automobile that had been taken from a couple in Lancaster, Pennsylvania, to be used in the murder. Hynson got out of the Kia and knocked on [the victim]'s front door. As [the victim] opened the door, Hynson asked, "Are you Omar?" and then shot [the victim] six times. Shell casings were ejected from Hynson's pistol and left at the murder scene. [The victim] collapsed and died on top of his five-year-old son, who had been on the living room floor near the front door. After the shooting, [Appellant] gestured to Hynson, from inside the Kia, to "hurry up." This was observed by a witness looking out the window of her

---

[2] We affirmed the PCRA court's denial of relief on Appellant's remaining issues, and our Supreme Court denied allowance of appeal. Direct appeal counsel's handling of the waiver colloquy is the sole remaining issue.

apartment. Hynson ran to the Kia, which was waiting for him with the front passenger's door open. After Hynson got into the Kia, he closed the door, and [Appellant] sped away from the scene.

A police officer happened to be driving into the Regency Park complex when a 911 dispatcher advised him of the shooting. The officer spotted the Kia and gave chase. During the chase, the murder weapon—a Hi-Point .380—was thrown from the car into the brush next to a railroad track. Due to the wet roadway, [Appellant] lost control and crashed the Kia into a ditch. [Appellant] and Hynson fled in different directions, and neither was apprehended by police at that time.

Other individuals in [Appellant's] Buick Riviera (another getaway vehicle) had been waiting, as planned, near the Regency Park complex and observed the police chasing the Kia to the location in Coatesville where [Appellant] had earlier switched from driving his own car, the Buick, and begun driving the Kia. They picked up Hynson, and Hynson told them that he had "just shot a man," that he and [Appellant] were being chased, and that [Appellant] was still running from the police. Hynson and others then drove around Coatesville looking for [Appellant] and trying to find the gun that had been "tossed" during the getaway chase. Neither [Appellant] nor the gun was located, so they visited Ramek Neal to advise him of what happened and then returned to Lancaster. [Appellant] also made his way back to Lancaster. When he arrived, he was wet, he had a gash on his head, and his clothing was ripped. [Appellant] told his friends that, while being chased by the police, he had crashed the Kia and then had to run on foot.

[Appellant's] fingerprints were found on the interior driver's door window of the crashed Kia. DNA testing confirmed the presence of Hynson's blood on the interior passenger's side of the Kia. Gunshot residue was also found inside the Kia. The murder weapon was found almost a year later by a woman walking her dog near the railroad tracks along [Appellant's] escape route. That weapon was traced back to a straw purchase in North Carolina made by Tolanda Williams, the mother of Hynson's child. Williams testified that during the week before the murder, she went with [Appellant] and Hynson to several pawn and gun shops in [Appellant's] Buick, to be the straw purchaser of guns. The tag number of [Appellant's] Buick was written down by one of the shop owners who became suspicious of one of the transactions.

J-S55030-18

During cross-examination, the gun shop owner identified [Appellant] as the driver of the Buick. The Hi-Point .380 murder weapon was also used by Hynson to shoot Edward Cameron in Lancaster at approximately 4:30 p.m. on October 18, 2004—less than seven hours before [the victim] was murdered in Coatesville. Shell casings from the two shootings were all matched to the Hi-Point .380 found along the escape route. Cell phone records indicated that [Appellant's] cell phone was active and used in the Coatesville area during and after the time of the murder.

*Isaac*, 2016 WL 5210891, at *1–2. At the conclusion of a six-day trial, the jury found Appellant guilty of first-degree murder and conspiracy. On July 8, 2009, the trial court sentenced Appellant to life in prison. This Court affirmed the judgment of sentence on direct appeal, and our Supreme Court denied allowance of appeal on August 12, 2012. Appellant filed this timely first PCRA petition on November 12, 2013.[3]

Presently, Appellant argues the PCRA court erred because counsel had no reasonable strategic basis for failing to raise the inadequate waiver colloquy on direct appeal, and because Appellant would have received a new trial had counsel challenged the defective waiver colloquy. Appellant's Brief at 4.

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

[3] Pursuant to 42 Pa.C.S.A. § 9545(b)(1) and Sup Ct. R. 13, the timeliness deadline was November 13, 2013.

- 4 -

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*). Counsel is presumed effective, and a PCRA petitioner asserting otherwise bears the burden of proof. *Id.* at 779-80. Specifically, the petitioner must prove by a preponderance of the evidence that (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis in support of the action or inaction; and (3) the petitioner suffered prejudice, *i.e.*, the outcome of the proceeding in question would have been different but for counsel's error. *Id.* at 780. A petitioner's failure to prove any one of these three prongs is fatal to the claim. *Id.*

The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article V, Section 9 of the Pennsylvania Constitution. *Commonwealth v. Clyburn*, 42 A.3d 296, 298 (Pa. Super. 2012).[4] When a defendant wishes to waive the right to counsel, the trial court is "ultimately responsible for ensuring that the defendant is questioned about the six areas [specified in Rule 121] and for determining whether the defendant is indeed making an informed and independent decision to waive counsel." *Commonwealth v. Davido*, 868 A.2d 431, 437 (Pa. 2005) (quoting *Commonwealth v. McDonough*, 812 A.2d 504, 508 (Pa. 2002)), *cert. denied*, 546 U.S. 1020 (2005). Specifically, "it is incumbent on the

_____

[4] This Court decided *Clyburn* two days before our affirmance of Appellant's judgment of sentence on direct appeal. Thus, it was not available to appellate counsel when she filed her Pa.R.A.P. 1925(b). Nonetheless, *Clyburn* relied on precedents.

court to fully advise the accused [of the nature and elements of the crime] before accepting waiver of counsel." **Clyburn**, 42 A.3d at 299 (quoting **Commonwealth ex rel. Clinger v. Russell**, 213 A.2d 100, 102 (Pa. Super. 1965)) (brackets added in **Clyburn**). A "penetrating and comprehensive colloquy" is mandatory, regardless of the defendant's experience with the system. **Id.** at 300 (quoting **Commonwealth v. Owens**, 750 A.2d 872, 876 (Pa. Super. 2000)). "Failure to conduct a thorough, on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error" on direct appeal. **Id.**

A defendant also has a constitutional right to self-representation. **Clyburn**, 42 A.3d at 298; **United States v. Isaac**, 655 F.3d 148, 153 (3d Cir. 2011), **cert. denied**, 566 U.S. 1029 (2012). This right prevents the Commonwealth from bringing a defendant into court and forcing a lawyer on him. **Commonwealth v. Starr**, 664 A.2d 1326, 1334-35 (1995). In other words, the right to counsel is intended as "an aid to a wiling defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." **Commonwealth v. Tejada**, 188 A.3d 1288, 1295 (Pa. Super. 2018) (quoting **Faretta v. California**, 422 U.S. 806, 820 (1975)).

We now turn to the facts of this case. The remand record reveals that Appellant was uncooperative during two separate waiver colloquies. At the first one, on September 18, 2008, Appellant repeatedly refused to answer the

trial court's colloquy questions because he believed the court lacked jurisdiction over him. N.T. Hearing, 9/18/2008, at 15-22. Appellant's uncooperative behavior led the trial court to have him gagged. *Id.* at 27. Eventually, the gag was removed and the trial court attempted a colloquy. Appellant stated that he did not know the elements of criminal homicide, and that he was unable to list the elements of the charged offenses. *Id.* at 43, 56. The trial court did not explain the elements to Appellant. Ultimately, the court denied Appellant's request to represent himself based on Appellant's insufficient understanding of the law. *Id.* at 59-62.

At the second hearing, on October 2, 2008, Appellant repeatedly referred to an "affidavit of specific negative averment" that he apparently attempted to file and serve on the trial court, among others. N.T. Hearing, 10/2/2008, at 6-8. Appellant apparently believed that the trial court's "default" in failing to respond to his affidavit rendered the criminal proceedings against him invalid. *Id.* at 10. Despite Appellant's failure to cooperate with a waiver colloquy the trial court granted Appellant's request to represent himself. *Id.* at 29. The court noted that Appellant's stated, at the September 18, 2008 hearing, that he did not understand the elements of the charged offenses. *Id.* at 31. Even so, the court did not describe the elements of the charged offenses to Appellant.

At the May 5, 2017 PCRA hearing ordered by the previous panel of this Court, direct appellate counsel, Brenda Jones, testified that her appointment

began in 2007.  N.T. Hearing, 5/2/17, at 10.  Another appointed attorney was first chair, and Jones was to serve as death penalty counsel.  *Id.*  Jones remembered the waiver colloquies as contentious.  *Id.* at 12.  Jones testified that Appellant was adamant about his decision to represent himself:

> [THE COURT:]  On the basis of your knowledge of [Appellant] and at the time of the second hearing, on his waiver of counsel, do you believe that if I as the trial judge had specifically outlined each and every element of each and every charge against him, that he would have under those circumstances changed his mind about wanting to represent himself?
>
> [JONES]:  Your Honor, no.  I always thought that he wanted to represent himself, Judge.  I never thought—I would say, this is my opinion, that it wouldn't have made any difference.
>
> THE COURT:  Okay.  When you were observing him during the course of the, at least the second hearing on self-representation, when combined with the first hearing on self-representation, how adamant was he on a scale of one to ten, ten being the highest and most adamant, about representing himself?
>
> [JONES]:  Your Honor, I would say he was a ten.

*Id.* at 20.

Procedurally, Jones was appointed to represent Appellant after he filed a *pro se* notice of appeal and a *pro se* Pa.R.A.P. 1925(b) statement.  *Id.* at 18.  Jones filed a motion for an extension of time to file a supplemental statement, pending completion of transcripts.  *Id.*  The trial court granted one such motion, but did not grant a second extension while Jones was still awaiting several transcripts, including the waiver colloquy transcripts.  *Id.* at 18, 25, 28.  In any event, Jones testified that she recalled from her presence at the September 18 and October 2, 2007 hearings that Appellant was not

aware of the elements of the charged offenses. *Id.* at 30. On appeal, Jones challenged Appellant's competency to represent himself, rather than the validity of the colloquy. *Id.* at 32-33. She believed his nonresponsive answers to the trial court's questions and his concern with matters irrelevant to his defense called his competency into question. *Id.* at 33. This Court found the competency issue waived for lack of an objection at trial. ***Commonwealth v. Isaac***, 46 A.3d 830 (Pa. Super. 2012) (unpublished memorandum, at 10); ***appeal denied***, 50 A.3d 125 (Pa. 2012). We also noted that Appellant did not specifically challenge the validity of the waiver colloquy. *Id.* For this reason, the previous collateral review panel of this Court concluded Appellant has not previously litigated the issue before us. ***See Isaac***, 2016 WL 5210891, unpublished memorandum at *3-4.

The PCRA court found that the record was unclear as to counsel's strategic basis for not challenging the waiver colloquy.[5] The PCRA court found Appellant's failure to prove prejudice dispositive. PCRA Opinion, 12/21/2017, at 3. Ultimately, we agree. Therefore, we will focus our analysis on this element.

In ***Commonwealth v. Pou***, ___ A.3d _____, 2018 WL 4925254 (Pa. Super. October 11, 2018), this Court considered circumstances similar to the

---

[5] The PCRA court did not make any finding on counsel's strategy, noting only that "[t]he testimony offered by appellate counsel at the hearing of May 2, 2017 did not conclusively answer this question. PCRA Court Opinion, 12/21/17, at 3.

instant case—the appellant waived his right to counsel at trial after a defective colloquy and appointed direct appeal counsel failed to raise the issue. In *Pou*, the trial court failed to apprise the appellant of the applicable statutory maximum sentences or inquire into his age, educational background, and ability to comprehend the proceedings. *Id.* at *1-2. There, as here, a panel of this Court found the issue to be of arguable merit and remanded for further proceedings after the PCRA court denied relief without a hearing. *Id.* *2. On remand, the PCRA court found that counsel had a reasonable strategic basis for choosing not to raise the issue, but this Court rejected that argument on appeal. *Id.* at *3. Instead, we concluded the petitioner failed to demonstrate prejudice even though the petitioner would have received a new trial had counsel challenged the Rule 121 colloquy on direct appeal. *Id.* at *4. "The failure to raise that claim was doubtlessly prejudicial, but as we shall explain it does not rise to the level of *Pierce* prejudice." *Id.* The reference is to *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987), wherein the Pennsylvania Supreme Court articulated the three-prong ineffective assistance of counsel analysis, in accord with the United States Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). As set forth above, a PCRA petitioner must normally plead and prove that counsel's error was prejudicial within the meaning of *Pierce*. In limited circumstances, pursuant to *United States v. Cronic*, 466 U.S. 648 (1984), prejudice can be presumed on collateral review.

The **Pou** Court relied on **Weaver v. Massachusetts**, 137 S.Ct. 1899 (2017), in which the United States Supreme Court explained that an error that would invalidate a conviction on direct appeal need not necessarily do so on collateral review. In **Weaver**, the defendant argued that trial counsel was ineffective for failing to object to the trial court's order closing the courtroom to the public. **Id.** at 1905-06. Had counsel raised the issue on direct appeal, the defendant would have received a new trial. **Id.** On collateral review, however, the **Weaver** Court held that the petitioner failed to demonstrate prejudice:

> As explained above, not every public-trial violation will in fact lead to a fundamentally unfair trial. Nor can it be said that the failure to object to a public-trial violation always deprives the defendant of a reasonable probability of a different outcome. Thus, when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, **Strickland** prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, […] to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

**Id.** at 1911 (internal citations omitted).

Consistent with **Weaver**, the Pennsylvania Supreme Court has held on several occasions that the absence of harmless error for purposes of direct appeal does not equate to presumed prejudice on collateral review. In **Commonwealth v. Reaves**, 923 A.2d 1119 (Pa. 2007), the trial court failed to comply with Rule 708(C)(2) of the Rules of Criminal Procedure, which requires the trial court to state on the record its reasons for the sentence it

- 11 -

imposes after a violation of probation ("VOP"). *Id.* at 1129; Pa.R.Crim.P. 708(C)(2). The Supreme Court noted that, "in a direct review context, Rule 708 operates in a fashion which is not unlike *Cronic*; prejudice (or rather the absence of harmless error) will be presumed from the failure to comply." *Id.* at 1129-30.

> Once a Rule 708 procedural complaint has been waived, however, and a derivative claim is raised under the guise of ineffective assistance of counsel, there is no reason to presume Sixth Amendment, *Strickland* prejudice from the VOP court's unobjected-to failure to comply with Rule 708. Derivative claims of ineffective assistance of counsel are analytically distinct from the defaulted direct review claims that were (or could have been) raised on direct appeal. *Commonwealth v. Collins*, 585 Pa. 45, 888 A.2d 564, 572–73 (2005). As noted, *Strickland* requires a showing of actual prejudice, not the presumed prejudice arising from *Cronic*, nor the harmless error standard that governs ordinary claims of trial court error on direct review, nor the presumption of harm arising on direct review of Rule 708 claims. This Court has long recognized the distinction between *Strickland* prejudice and the harmless error standard applicable in the direct review context, and this distinction can be outcome-determinative.

*Id.* at 1130.

Likewise, in *Commonwealth v. Mallory*, 941 A.2d 686 (Pa. 2008), *cert. denied*, 555 U.S. 884 (2008), our Supreme Court refused to presume prejudice where the trial court failed to conduct an oral colloquy before permitting the defendants to waive their right to a jury trial pursuant to Pa.R.Crim.P. 620. The *Mallory* Court also explained the distinction between a waiver colloquy and the underlying right. "A waiver colloquy is a procedural

device; it is not a constitutional end or a constitutional 'right.'" *Id.* at 697.

Further,

> "[A]n on-the-record colloquy is a useful procedural tool whenever the waiver of any significant right is at issue, constitutional or otherwise, *e.g.* waiver of a trial, **waiver of the right to counsel**, waiver of the right to call witnesses, waiver of the right to cross-examine witnesses, waiver of rules-based speedy trial time limits, etc. **But the colloquy does not share the same status as the right itself.**

*Id.* (emphasis added).

The Supreme Court reasoned that a constitutional, structural error creating presumed prejudice under *Cronic* would have occurred if, for example, a timely jury trial demand was wrongly denied. *Id.* at 697. Counsel's effectiveness during a waiver colloquy, on the other hand, is "far removed" from a structural constitutional error. *Id.* On collateral review, therefore, when the issue is counsel's effectiveness, a "presumptively-valid waiver […] must be analyzed like any other ineffectiveness claim." *Id.* at 698. That is, the prejudice analysis must encompass the "totality of relevant circumstances." *Id.* In the context of a jury trial waiver, those circumstances could include "the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record instructions counsel had with his client." *Id.* The defendant must show that his understanding of the jury waiver was impaired by counsel's performance, and that he would have elected a jury but for counsel's performance. *Id.* at 702.

Later, in **Commonwealth v. Spotz**, 18 A.3d 244 (Pa. 2011), the PCRA petitioner challenged counsel's failure to object to a defective waiver of counsel colloquy. The Supreme Court held that, "[t]o establish prejudice, the petitioner must demonstrate a reasonable probability that but for counsel's ineffectiveness, he would not have waived the right at issue." **Id.** at 263-64.

We now turn back to **Pou**, which, like the instant matter, concerned appellate counsel's failure to raise a defective waiver colloquy on direct appeal. We acknowledged there was "no doubt" the petitioner would have received a new trial had counsel raised the issue on direct appeal. **Id.** at *6. Consistent with **Weaver** and our State Supreme Court precedents, however, we concluded the technical deficiency under Rule 121 was not sufficient, in and of itself, to establish prejudice on collateral review. **Id.** at 7-8. That is, the trial court's failure to comply with the technicalities of a rule does not amount to a structural error warranting presumed prejudice. **Id.** The United States Constitution requires that a defendant "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" **Id.** at *9 (quoting **Faretta**, 422 U.S. at 835). Therefore, "Rule 121 goes farther than what the United States Constitution requires" and "a technically-deficient

waiver of counsel colloquy is not the same as a constitutionally deficient waiver of counsel." *Id.*[6]

Instantly, Appellant relies on case law governing direct review. Without expressly acknowledging it, he presents this case as one involving structural error and presumed prejudice pursuant to *Cronic*. Specifically, Appellant's reliance on *Clyburn* is misplaced. There, the trial court failed to inform the defendant of the charges against him and the elements of each of those charges. *Clyburn*, 42 A.3d at 301. This Court therefore found itself "constrained" to hold that the defendant's waiver of counsel was invalid, and that "the failure to explain the elements of the charged crimes requires us to vacate the judgment of sentence." *Id.* (citing *Commonwealth v. Houtz*, 856 A.2d 119, 130 (Pa. Super. 2004)). As *Clyburn* was decided on direct appeal, it is inapposite.

As was the case in *Pou*, Appellant fails to distinguish between a technically deficient waiver colloquy and a constitutionally deficient waiver

---

[6] We observe that, in *Commonwealth v. Meehan*, 628 A.2d 1151 (Pa. Super. 1993), *appeal denied*, 649 A.2d 670 (Pa. 1994), this Court held that, on collateral review, the PCRA court need not conduct a full colloquy before permitting the petitioner to waive counsel, as several of the mandatory inquiries are inapplicable on collateral review (*Meehan* was decided under Rule 318, the predecessor to current Rule 121). The *Meehan* Court noted the petitioner's failure to assert "that he would not have waived his right to counsel if more specific inquiry had been made into the relevant areas." *Id.* at 1159. *Meehan* is not directly applicable here because it governs a petitioner's statutory right to counsel on collateral review.

colloquy, and he does not argue that the instant case presents an example of the latter.

The deprivation of the colloquy, as we have already explained, does not share the same status as the deprivation of the right itself. *Mallory*, 941 A.2d at 697. Under *Mallory*, a structural error would have occurred here if, for example, Appellant demanded and was refused counsel. In fact, Appellant had two appointed lawyers representing him when he insisted on his right to self-representation and failed to cooperate with the trial court's Rule 121 colloquy.[7]

---

[7] Regarding Appellant's behavior at the colloquies, the PCRA court cited *Commonwealth v. Bastone*, 467 A.2d 1339 (Pa. Super. 1983), in which the defendant was unrepresented by counsel at his preliminary hearing. This Court considered former Rule 318(b), which required a knowing, intelligent, and voluntary waiver before a defendant proceed without counsel at a preliminary hearing. The trial court attempted to conduct a waiver colloquy, but the defendant refused to answer questions, refused to sign a written colloquy, and eventually turned his back to the judge. This Court wrote:

> We believe that appellant's contemptuous behavior constituted a knowing, voluntary and intelligent waiver of counsel. To require a written waiver in a case such as this could create a 'Catch-22' situation in that a 'court-wise' criminal defendant could continually appear in court without counsel on the date scheduled for his trial but refuse to execute a written waiver of his right to counsel making it impossible to proceed with his trial. Obviously, such a situation would render the judicial system a mockery.

*Id.* at 1341. Further, this Court found that any error was harmless because the defendant failed to explain how he was prejudiced by the absence of counsel at a preliminary hearing. *Id.*

In light of the foregoing, we conclude Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/19

---

The "Catch-22" problem does not arise here because Appellant had appointed counsel. Further, given Appellant's failure to attempt to prove prejudice in accord with the cases discussed in the main text, we need not decide whether **Bastone**, decided under Rule 318, applies with equal force to Rule 121. Likewise, we need not consider the Commonwealth's assertion that Appellant's behavior resulted in forfeiture of his right to counsel.