J-S32039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN T. MOSES | : | |
| | : | |
| Appellant | : | No. 2597 EDA 2019 |

Appeal from the judgment of sentence entered August 10, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0010562-2012.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED OCTOBER 6, 2020**

Shawn T. Moses appeals from the judgment of sentence imposed

following his conviction of robbery, aggravated assault, possession of an

instrument of crime ("PIC"), and simple assault.[1]  We affirm.

The trial court summarized the relevant factual history as follows:

> On August 15, 2012, Brian Atkerson was at his home at
> about 9:15 [a.m.], along with his children and their mother,
> Freweini "Mimi" Goitom.  [Moses] appeared at the door and
> Atkerson went outside to speak with him.  Atkerson had known
> [Moses] for approximately 30 years.  Prior to this date, [Moses]
> had contacted Atkerson several times in an effort to retrieve some
> money and property [Moses] believed he had lost while living with
> Atkerson's cousin.
>
> Outside, [Moses] said to Atkerson: "Reason I'm here today
> is because you had X amount of time to give me some money and
> you choose not to give me the money.  So, basically, today is the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2702(a), 3701(a)(1), 907(a), 2701(a).

day it's going down." When Atkerson asked what he was talking about, [Moses] lifted his shirt to display a black Glock handgun in his waistband and said: "I got the gat on me." [Moses] then pointed the gun at Atkerson's midsection. Atkerson recognized the gun from having seen it in [Moses'] possession on prior occasions. Atkerson told [Moses] to leave, to which he responded that he had text messages saying Atkerson had taken [Moses'] property. When Atkerson went to look at the phone, [Moses] struck Atkerson on his ear with the gun. [Moses] hit Atkerson several more times, including the right eye, as Atkerson fended him off.

At some point, Mimi Goitom opened the window, saw what was going on and told [Moses] he needed to go because she was going to call the police. [Moses] then broke off the struggle and started to walk up the street. When the police responded to the call from Mimi Goitom, Atkerson told them what had happened and described [Moses].

[Moses] was stopped by police, but no gun was recovered.

As a result of being struck by [Moses], Atkerson had a black eye and bruises on his ear.

Trial Court Opinion, 2/12/19, at 2-3 (citations to the record omitted).

Moses was arrested and charged with robbery, aggravated assault, PIC, simple assault, and related offenses. Moses was appointed numerous court-appointed counsel and public defenders, and was dissatisfied with the representation provided by each of them. Moses thereafter sought leave to proceed *pro se* with standby counsel. The trial court undertook a colloquy on the record to determine Moses' understanding of the rights he was giving up by waiving counsel, the risks associated with proceeding *pro se*, and the voluntariness of his decision to do so. Ultimately, because Moses convinced the trial court that his decision to represent himself at trial was knowing,

- 2 -

voluntary and intelligent, the court granted his request to proceed *pro se* with standby counsel.

The matter then proceeded to a jury trial. During cross-examination, Moses attempted to question Atkerson regarding text messages that Atkerson exchanged with Moses' mother, Ms. Moss. Atkerson admitted that he had sent her text messages, but could not recall the substance of the text messages. The Commonwealth objected to any questioning regarding the content of the text messages because they had not been provided to the Commonwealth. The trial court ruled that the text messages were irrelevant, and precluded their admission. At the close of the Commonwealth's case, Moses represented to the trial court that he intended to call Ms. Moss as a witness. The trial court initially stated that it would receive her testimony; however, the trial court later reversed that ruling because Moses' only purpose in calling Ms. Moss was to have her testify about the text messages.

Moses also represented to the trial court that he wished to testify on his own behalf. The trial court conducted a colloquy regarding his testimonial rights, after which Moses was undecided about testifying. The trial court instructed Moses to consider the matter overnight, and to speak with standby counsel regarding his decision. The next day, Moses informed the trial court that he had changed his mind, and did not wish to testify. At the conclusion of trial, the jury convicted Moses of the above-noted offenses.

On August 10, 2018, the trial court imposed an aggregate prison sentence of six to fifteen years. Moses filed timely post-sentence motions which the trial court denied. Moses filed a timely notice of appeal. Both Moses and the trial court complied with Pa.R.A.P. 1925. However, the appeal was dismissed for Moses' failure to file an appellate brief. Moses filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA")[2] seeking to reinstate his direct appeal rights. On August 30, 2019, the PCRA court reinstated Moses' direct appeal rights *nunc pro tunc*. On September 9, 2019, Moses filed a timely notice of appeal.[3]

Moses raises the following issues for our review:

1. Did [Moses] waive his right to counsel knowingly, intelligently, and voluntarily pursuant to his Sixth Amendment right to counsel under the United States Constitution and under Article 1, Section 9 of the Pennsylvania Constitution?

2. Did the honorable trial court err by precluding [Moses] from introducing evidence of [Atkerson's] text messages exchanged

---

[2] **See** 42 Pa.C.S.A. §§ 9541-9546.

[3] In his September 9, 2019 notice of appeal, Moses purports to appeal from the August 30, 2019 PCRA order reinstating his direct appeal rights *nunc pro tunc*. This is technically incorrect, as his *nunc pro tunc* appeal properly lies from the August 10, 2018 judgment of sentence. However, as Moses' appeal was timely filed, the parties have proceeded as if he appealed from the judgment of sentence, and foreclosing review on the basis of this procedural misstep would likely result in further proceedings reinstating Moses' right to file an appeal from the judgment of sentence *nunc pro tunc*, we treat his appeal from the PCRA court's order as one from the judgment of sentence. **See Commonwealth v. Walter**, 119 A.3d 255, 258 n.1 (Pa. 2015); **see also** Pa.R.A.P. 105(a) (permitting appellate courts to disregard the Rules of Appellate Procedure for good cause or in the interest of judicial efficiency).

by and between [Atkerson] and [Ms. Moss] at the trial of [Moses'] case?

3. Did the honorable trial court err by precluding defense witness, . . . Ms. Moss . . . from testifying at trial in support of [Moses'] defense?

4. Did [Moses] make a knowing, intelligent and/or voluntary waiver of his right to refrain from testifying at the trial of his case?

Moses' Brief at 4-5.

In his first issue, Moses contends the trial court erred by permitting him to proceed *pro se* because he did not knowingly, intelligently, or voluntarily waive his right to trial counsel. Our review of this issue is guided by the following principles.

> The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article V, Section 9 of the Pennsylvania Constitution. When a defendant wishes to waive the right to counsel, the trial court is ultimately responsible for ensuring that the defendant is questioned about the six areas specified in Pa.R.Crim.P. 121 and for determining whether the defendant is indeed making an informed and independent decision to waive counsel. Specifically, it is incumbent on the court to fully advise the accused of the nature and elements of the crime before accepting waiver of counsel. A penetrating and comprehensive colloquy is mandatory, regardless of the defendant's experience with the system. Failure to conduct a thorough, on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error on direct appeal.

*Commonwealth v. Isaac*, 205 A.3d 358, 363 (Pa. Super. 2019) (internal citations, brackets, and quotation marks omitted).

When a defendant desires to represent himself, he must petition the court and the court must follow the appropriate legal procedure for securing

- 5 -

a valid waiver of counsel. ***See Commonwealth v. McDonough***, 812 A.2d 504, 506 (Pa. 2002). Pennsylvania Rule of Criminal Procedure 121 sets forth the procedure a judge must follow to determine whether the waiver of counsel was made knowingly, voluntarily and intelligently. Rule 121 provides, in relevant part, as follows:

(A) Generally.

(1) The defendant may waive the right to be represented by counsel.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

> (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>
> (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>
> (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>
> (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
>
> (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
>
> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur

and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

\* \* \* \*

(C) Proceedings Before a Judge.  When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.

(D) Standby Counsel.  When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice.

Pa.R.Crim.P. 121(A)(1), (2), (C), (D).  In addition to these factors, a waiver colloquy must contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy.  *See Commonwealth v. McDonough*, 812 A.2d 504, 507 (Pa. 2002).

Moses argues that his responses to the trial court's colloquy were "equivocal, thus invalidating any potential waiver of trial counsel."  Moses' Brief at 30.  He further argues that the trial court's colloquy was "incomplete" and "missing critical instructions and responsive dialogue required to render a waiver of counsel knowing, intelligent, and voluntary." *Id*. at 30-31.  Moses contends that the trial court "merely recited a portion of the colloquy found at [Rule] 121(a) through (e)" and "either interrupted or redirected [Moses] before ascertaining whether [Moses'] decision to proceed *pro se* was truly voluntary, knowing, and intelligent; or instead, arose from frustrations arising from [Moses'] unfortunate experience with prior counsel." *Id*. at 38-39.

Moses additionally asserts that the trial court "did not refer to the Pennsylvania Rules of Evidence or [Moses'] need to familiarize himself with those rules and/or the potential consequences of failing to do so." *Id*. at 39. Moses claims that the trial court's failure to appraise him that he needed to familiarize himself with the Rules of Evidence resulted in the exclusion of evidence that was vital to Moses' defense at trial. Moses contends that the trial court "never ascertained from [Moses] what, if any, trial defenses were contemplated by [Moses] in response to the criminal charges." *Id*. Moses maintains that the trial court "failed to determine what, if any information, [Moses] either possessed or was targeting in preparation for trial, so that [Moses] could be adequately prepared to confront objections and offers of proof at his own trial." *Id*. at 40. According to Moses, "[he] was never advised by the [t]rial [c]ourt that his failure to raise objections or his inability to respond comprehensively to a request for offer of proof could result in his loss of use of potentially vital defense evidence." *Id*.

Moses additionally claims that the trial court "failed to explain the advantages of utilizing an experienced trial attorney during the defense of his case . . . and prevented [Moses] from articulating his reasons and/or circumstances which led to [Moses'] request to proceed *pro se* at trial." *Id*. at 44. Moses argues that the trial court "made no attempt(s) to educate [Moses] as to the potential hazard of proceeding *pro se* . . . [nor any] effort(s) to determine [Moses'] prior experience with defense counsel, or the

circumstances leading to [Moses'] decision to conduct his own defense." *Id*. at 49.

Moses further faults the trial court for conducting the colloquy "on a single occasion approximately eight months and two trial listings before trial was commenced." *Id*. He claims that "[t]he [t]rial [c]ourt did not even inquire as to any potential change of circumstances or new facts that may have arisen between [the colloquy] and the trial date." *Id*. at 50. According to Moses, "[he] was left to defend himself without being in physical possession of relevant and corroborating physical evidence . . . [consisting of] phone records with text messages [which] had either been lost or discarded by prior appointed trial counsel." *Id*. at 50. Moses points out that he was precluded prior to trial from calling his sole fact witness, Ms. Moss, who could have testified regarding her conversations with Atkerson which would have contradicted Atkerson's testimony that he had "no responsibility or agreement to reimburse [Moses] for lost or stolen property and which would have also supported [Moses'] defense that [Atkerson] manufactured the charges against [Moses] to evade a debt to [Moses]." *Id*. at 50-51.

Based on our review of the record, we are satisfied that the trial court substantially complied with the dictates of Rule 121. After Moses indicated his desire to proceed *pro se*, the trial court conducted a hearing to ascertain from Moses, on the record, whether he was making a knowing, voluntary, and intelligent waiver of counsel. *See* N.T., 3/20/17, at 4-23; *see also*

Pa.R.Crim.P. 121(C). At that hearing, trial court inquired about Moses' age, educational background, and basic comprehension skills. *See* N.T., 3/20/17, at 4-5. Moses indicated that he was forty-four years old, had a college degree, and could read, write, and understand the English language. *Id*. at 4-5. Moses also confirmed that he was not under the influence of drugs, alcohol, or any other substance. *Id*. at 5. The trial court thereafter elicited testimony from Moses that complied with each of the requirements of Rule 121(A)(2).

Moses indicated on the record that he understood his right to be represented by counsel, and that he had the right to have free counsel appointed if he was indigent. *See* N.T., 3/20/17, at 5, 6; *see also* Pa.R.Crim.P. 121(A)(2)(a). The trial court appraised Moses of each crime listed in the criminal complaint and the Commonwealth's burden of proof for each of those crimes. *See* N.T., 3/20/17, at 7-10; *see also* Pa.R.Crim.P. 121(A)(2)(b). In response, Moses repeatedly indicated that he understood the nature of the charges against him and the elements of each offense. *See* N.T., 3/20/17, at 7-10. The trial court explained the range of sentences for each offense, and the district attorney explained the applicable fines for each crime. *See* N.T., 3/20/17, at 11-14; *see also* Pa.R.Crim.P. 121(A)(2)(c). Moses repeatedly confirmed on the record his understanding of the sentence ranges and the applicable fines. *See* N.T., 3/20/17, at 11-14. The trial court advised Moses of the sentencing guideline ranges based on his prior record

score and offense gravity score. *Id*. at 14-15. Moses confirmed his understanding of the sentencing ranges. *Id*.

The trial court explained to Moses that if he elected to waive his right to counsel, he would still be bound by all the normal rules of procedure that counsel would be familiar with, and that, despite the appointment of standby counsel, Moses would be directly responsible to comply with those rules. *See id*. at 15-16; *see also* Pa.R.Crim.P. 121(A)(2)(d). Moses confirmed his understanding of this risk. *See* N.T., 3/20/17, at 15-16. The trial court explained to Moses that there were possible defenses to the charges that counsel might be aware of, and if these defenses were not raised at trial, they may be lost permanently. *See* N.T., 3/20/17, at 16; *see also* Pa.R.Crim.P. 121(A)(2)(e). Moses indicated to the trial court that he understood these potential consequences. *See* N.T., 3/20/17, at 16. The trial court explained that, in addition to defenses, there may be other rights that, if not timely asserted by Moses, could be lost permanently. *See* N.T., 3/20/17, at 16-17; *see also* Pa.R.Crim.P. 121(A)(2)(f). Again, Moses indicated his understanding of these risks. *See* N.T., 3/20/17, at 17.

The trial court asked Moses whether anyone had coerced him into waiving his right to counsel, and Moses confirmed that he had not been coerced, and that waiver of his right to counsel was his decision. *Id*. at 17-18. The trial court asked Moses whether he had any questions regarding his rights, or the pros and cons surrounding his decision to represent himself at

trial, and Moses responded in the negative. *Id*. at 20-21. Moses informed the trial court that, with respect to his defense at trial, "no one can do it better than myself." *Id*. at 18. The trial court, having been satisfied that Moses' waiver of counsel was knowing, voluntary, and intelligent, ruled that he could proceed *pro se*, and appointed Moses standby counsel. *See* N.T., 3/20/17, at 22-23; *see also* Pa.R.Crim.P. 121(D).

While Moses argues that his responses were "equivocal," the record indicates a clear confirmation of his understanding of the requisite information provided to him, and his desire to proceed *pro se* despite the risks involved. Although the trial court did not specifically refer to the Pennsylvania Rules of Evidence, it was not required to do so by Rule 121. The rule merely required that the trial court ascertain Moses' understanding that he "will still be bound by all the normal rules of procedure." *See* Pa.R.Crim.P. 121(A)(2)(d). The trial court's explanation to Moses that he would be strictly responsible to comply with, and "be bound by all the rules of procedure that counsel would be familiar with[,]" amply satisfied this requirement. *See* N.T., 3/20/17, at 15-16.

Similarly, the trial court was not required by Rule 121 to inquire into the defenses contemplated by Moses or what information Moses either possessed or was targeting in preparation for trial. Nor was the trial court required by Rule 121 to specifically advise Moses that his failure to respond comprehensively to a request for offer of proof could result in his loss of use

of potentially vital defense evidence. Further, the trial court was not required by Rule 121 to explain the myriad of advantages of utilizing an experienced trial attorney or to elicit from Moses his reasons for requesting to proceed *pro se* at trial. Rule 121 also did not require the court to educate Moses as to the potential hazards of proceeding *pro se* or determine Moses' prior experience with defense counsel. With respect to Moses' claim that the trial court erred by conducting the colloquy eight months before trial commenced, had Moses changed his mind in that time period, he could have alerted the trial court to any change of circumstance or a reconsideration of his decision to waive counsel. However, Moses did not do so.

While the trial court did not specifically inform Moses that "if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently," **see** Pa.R.Crim.P. 121(A)(2)(f), this deficiency does not automatically entitle Moses to relief. Pursuant to Rule 121, the trial court must ascertain on the record:

> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2)(f).

Here, the trial court informed Moses that, in addition to the loss of potential defenses, he may have rights that, if not timely asserted during trial, could be lost permanently.

> THE COURT: All right. Do you understand that in addition to these defenses there may be other rights that if not timely asserted in the proper way may be forever lost? Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: So the bottom line is if you suffer some prejudice from not knowing the rules or the process well enough, you would likely not be successful in getting a new trial alleging those reasons. Do you understand that?
>
> THE DEFENDANT: I do understand that.

*See* N.T., 3/20/17, at 16-17.

While the trial court did not discuss the subject area covered by Rule 121(a)(2)(f) by using the exact language provided by the rule, the colloquy nevertheless established that Moses understood that certain rights had to be timely asserted, and in the proper manner, in order to be preserved. In our view, this portion of the colloquy adequately addressed the subject area covered by subsection (a)(2)(f).[4] *See Isaac*, 205 A.3d at 363 (providing that the trial court is responsible for ensuring that the defendant is questioned about the six areas specified in Rule 121). Moreover, because Rule 121 goes

---

[4] Moreover, as noted by the trial court, "[Moses] was aware of his obligation to object, or make a decision not to object, and he did so unequivocally and with regularity throughout the trial." Trial Court Opinion, 2/12/19, at 5 (citing N.T., 11/7/17, at 35, 39, 53, 58, 97, 130, 133, 135, 164, 198, 200). The trial court further concluded that there was no prejudice to Moses from the court's failure to explain the need to timely object to errors because none of Moses' claims on appeal are subject to waiver due to the absence of a timely objection. *See id*. at 5-6.

farther than what the United States Constitution requires, a technically-deficient waiver of counsel colloquy is not the same as a constitutionally deficient waiver of counsel.[5] **Id**. at 367. Accordingly, as the record demonstrates that the trial court satisfied the minimum requirements of Rule 121, and the record supports the trial court's conclusion that Moses' waiver of counsel was, in fact, knowing, intelligent, and voluntary, we cannot grant him relief on his first issue.

In his second and third issues,[6] Moses contends that the trial court erred in precluding him from (1) introducing into evidence certain text messages exchanged between Atkerson and Ms. Moss; and (2) calling Ms. Moss as a defense witness at trial. Our standard of review concerning the admissibility of evidence at trial is well-settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

---

[5] The United States Constitution merely requires that a defendant "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" **Isaac**, 205 A.3d at 367 (citation omitted).

[6] Pursuant to our procedural rules, Moses was required to divide his argument into as many parts as there are questions presented. **See** Pa.R.A.P. 2119(a). However, in his brief, Moses discusses his second and third issues together. We will overlook this deficiency and do the same.

- 15 -

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015).

Moses contends that he should not have been precluded from presenting the testimony of Ms. Moss regarding her conversations with Atkerson (verbal, texts and emails) because the trial court failed to advise Moses about his obligations to become familiar with the Rules of Evidence, including offers of proof. Moses asserts that, in response to the Commonwealth's objection to the introduction into evidence of the text messages on the basis that they had not been provided to the Commonwealth, he advised the trial court that his mother still had the phone on which the texts were stored, and that the original messages could be reviewed by the court.

Moses argues that Ms. Moss should have been able to testify regarding her conversations with Atkerson because many of the conversations were verbal and via email, and not contained within text messages. Moses contends that Ms. Moss' testimony regarding her conversations with Atkerson constituted the "crux" of his defense. Moses' Brief at 70. He claims that he "should not be held responsible for espousing an inarticulate offer of proof in response to a Commonwealth objection especially whereas here, [Moses] never received any court instruction regarding gaining familiarity with the Pennsylvania Rules of Evidence." ***Id***. at 71. Moses claims that he was under no obligation to provide the Commonwealth with impeachment evidence. Moses further claims that he had no ability to anticipate that Atkerson would contradict his previous statements to Ms. Moss during his trial testimony. He

- 16 -

claims that the trial court's ruling constitutes an abuse of discretion which prejudiced Moses by prohibiting him from proffering any defense evidence at trial.

As discussed above, the trial court was not required by Rule 121 to specifically advise Moses that he needed to familiarize himself with the Rules of Evidence. *See* Pa.R.Crim.P. 121. Moreover, the trial court considered Moses' second and third issues and determined that they lack merit. It reasoned that the messages did not establish a defense to the charges:

> [T]he content of the messages was irrelevant. The test for determining relevancy is whether the evidence sought to be introduced tends to establish a material fact or make a fact at issue more or less probable. *Commonwealth v. Brown*, 414 A.2d 70 (Pa. 1980); *Commonwealth v. Scott*, 389 A.2d 79 (Pa. 1978). [Atkerson] acknowledged sending messages to [Ms. Moss]. [Atkerson] further acknowledged that there was a dispute over property and money that [Moses] believed [Atkerson] was responsible for. NT, 11/7/17, 37-39. The actual messages added nothing to this topic.
>
> Moreover, the whole matter to which the emails allegedly related was itself irrelevant. Even if [Atkerson] had stolen or misappropriated [Moses'] property, that is not a defense to the charges. The law does not recognize a gunpoint self-help recovery of property in the possession of another as an exception to the robbery statute. *Commonwealth v. Dombrauskas*, 418 A.2d 493, 497 (Pa. Super. 1980) ("If one resorts to his own resources to take money physically from another in such instances, public policy precludes the assertion of a claim of right defense..."). *Accord Commonwealth v. Spector*, [188 A.3d 545] (Pa. Super. 2018) [(unpublished memorandum)]. Nor are the text messages in any way relevant or a defense to the assault and weapon charges. *See generally*, Chapter 2 (culpability) and Chapter 5 (general principles of justification) of Title 18, the Pennsylvania Crimes Code. Simply put, the only purpose for the text messages was to support the defense theory that [Moses] was just getting back his stuff. Because no such defense is cognizable under

- 17 -

> Pennsylvania law, the text message evidence about the details of the already acknowledged prior property dispute was irrelevant and properly excluded. In sum, further testimony as to the content of the text messages was irrelevant and the [c]ourt properly exercised it discretion in controlling the admission of evidence.

Trial Court Opinion, 2/12/19, at 8-9.

We discern no abuse of discretion by the trial court in its evidentiary rulings. The text/email messages and the testimony of Ms. Moss that Moses sought to introduce into evidence were not relevant to any fact of consequence in determining the action. The question of whether Atkerson had misappropriated Moses' property or owed Moses money on the date of the incident simply did not bear upon any defense to the pending criminal charges. *See* Pa.R.E. 401. Accordingly, Moses' second and third issues warrant no relief.

In his final issue, Moses contends that he did not knowingly, intelligently, or voluntarily waive his right to testify on his own behalf at trial. Initially, there is no requirement that the trial court conduct an on-the-record colloquy when a defendant waives his right to testify. *See Commonwealth v. Baldwin*, 8 A.3d 901, 907 (Pa. Super. 2010). Instead, the decision of whether or not to testify on one's own behalf is generally to be made by the defendant after full consultation with counsel. *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000). However, when a defendant elects to proceed *pro se*, as was herein the case, he cannot obtain relief by raising a claim of ineffectiveness of standby counsel. *See Commonwealth v. Spotz*,

47 A.3d 63, 83 (Pa. 2012); **see also Commonwealth v. Fletcher**, 986 A.2d 759, 778 (Pa. 2009) (holding that a defendant who chooses to represent himself has no recourse if he or standby counsel has been ineffective). The appointment of standby counsel does not imply or authorize some sort of hybrid representation. **Spotz**, 47 A.3d at 83. Thus, "[w]hen a defendant elects to proceed at trial *pro se*, the defendant -- and not standby counsel -- is in fact counsel of record and is responsible for trying the case." **Id**.

Moses points out that he initially informed the trial court of his intention to testify on his own behalf. However, the next day, after discussing the matter with standby counsel, Moses informed the trial court that he did not wish to testify on his own behalf. Moses claims that the "sudden reversal of his decision to present his testimony in support of his defense resulted from stand-by counsel's interference and from erroneous advice provided to [Moses] by stand-by counsel." Moses' brief at 77. According to Moses, standby counsel advised him that he need not testify since Ms. Moss was the appropriate impeachment witness regarding Atkerson's prior inconsistent statements. **Id**. at 78. Moses argues that standby counsel misinterpreted the trial court's prior ruling prohibiting Ms. Moss from testifying. Moses further argues that the trial court failed "to adequately explore whether [his] reversal of his earlier representation to testify at his trial was made knowingly, intentionally, and/or voluntarily[.]" **Id**.

As explained above, a defendant who chooses to represent himself has no recourse if he or standby counsel has been ineffective. ***See Spotz***, 47 A.3d at 83; ***Fletcher***, 986 A.2d at 778. Therefore, as Moses elected to proceed *pro se*, he cannot fault standby counsel for his decision not to testify at trial.

Similarly, Moses' claim that the trial court erred in conducting a defective colloquy does not entitle him to relief. As indicated above, the trial court was under no obligation to conduct a colloquy regarding Moses' testimonial rights. ***See Baldwin***, 8 A.3d 907. Nevertheless, the trial court did, in fact, extensively colloquy Moses regarding his right to testify. ***See*** N.T. 11/7/17, at 211-15. Given Moses' decision to proceed *pro se*, he alone was responsible for his decision to testify or not to testify, and the fact that the trial court undertook to inform that decision does not entitle Moses to any relief. Accordingly, Moses' final issue fails.

Having found no merit to any of Moses' issues on appeal, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/06/2020