J-S06025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFERY EDEN | : | |
| | : | |
| Appellant | : | No. 37 EDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012587-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFERY EDEN | : | |
| | : | |
| Appellant | : | No. 38 EDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012657-2011

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 28, 2021**

Appellant Jeffrey Eden appeals from the order dismissing his timely first petition for relief under the Post Conviction Relief Act[1] (PCRA). Appellant argues that the PCRA court erred in rejecting his claims that trial counsel was

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

ineffective for failing to (1) move for a judgment of acquittal based on the absence of a criminal information, (2) object to the final jury instruction, which did not define reasonable doubt, and (3) object to the jury instruction on corruption of minors. We affirm.

We adopt the PCRA court's summary of the facts underlying this matter. *See* PCRA Ct. Op., 7/14/20, at 1-5. Briefly, a jury convicted Appellant of numerous offenses at two separate docket numbers based on allegations that he sexually abused two minor victims, A.S. and M.O. On November 19, 2014, the trial court sentenced Appellant to an aggregate term of fifteen to thirty years' incarceration. On appeal, this Court affirmed Appellant's convictions, but vacated Appellant's sentence for involuntary deviate sexual intercourse based on *Alleyne*.[2] *See Commonwealth v. Eden*, 1401 EDA 2015 (Pa. Super. filed May 23, 2017) (unpublished mem.).

On June 14, 2018, Appellant filed a timely PCRA petition raising several claims relating to trial counsel's ineffectiveness. On October 15, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. The PCRA court subsequently dismissed Appellant's petition on December 5, 2019.

---

[2] *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

On December 21, 2019, Appellant filed timely notices of appeal at both underlying trial court docket numbers.[3] Appellant subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement, and the PCRA court issued a Rule 1925(a) opinion addressing Appellant's claims.[4]

On appeal, Appellant raises the following issues:

1. Whether trial counsel was ineffective in failing to argue that because no "Bills of Information" were ever filed by the Commonwealth identifying the charges against [Appellant] and what charges the Commonwealth was proceeding under in these case(s) and as required by Pa.R.Crim.P. 560(A), [Appellant] was denied due process which resulted in prejudice.

2. Whether trial counsel was ineffective for failing to object failing to instruct the jury, [sic] during the trial court's charge to the jury on the definition of "reasonable doubt" and how that reasonable doubt impacts the burden of proof as required by Pa. SSJI 7.01 in her charge to the jury in violation of the 14th Amendment to the United States Constitution and Pennsylvania Constitution, Article I, Section 9, which resulted in prejudice to [Appellant].

3. Whether trial counsel was ineffective in not objecting to the trial court's failing to properly read the jury charge for corruption of the morals of a minor by reading all three (3) sections of the charge rather than the two (2) sections which

_____

[3] We note that Appellant complied with our Supreme Court's decision in **Walker** by filing separate notices of appeal under each trial court docket number. **See Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). Both matters have been consolidated for appeal. **See** Order, 6/22/20.

[4] Appellant raised several issues in his Rule 1925(b) statement that he does not discuss in his brief. Therefore, those claims are abandoned for purposes of this appeal. **See Commonwealth v. Dunphy**, 20 A.3d 1215, 1218 (Pa. Super. 2011) (stating that issues raised in a Rule 1925(b) but not developed in an appellate brief are abandoned).

were applicable to the case against defendant resulting in prejudice to [Appellant].

Appellant's Brief at 7.

In his first claim, Appellant argues that trial counsel was ineffective for failing to seek dismissal of the charges based on the fact that the Commonwealth did not file bills of information. *Id.* at 17. Appellant contends that "he was never adequately informed of the charges against him" because "the Commonwealth sought to prosecute [Appellant] without alleging or proving a specific date" for each offense. *Id.* at 18. Further, he asserts that he was "greatly prejudiced by the Commonwealth's failure as he was not able to prepare a proper a defense at trial because the dates of the offenses were never firmly established and he was never put on proper notice of same." *Id.* at 20. He also argues that although "a criminal complaint was filed, there were criminal dockets, a preliminary hearing, amendments to the complaint[,] and discovery[, it] does not vitiate the need for [b]ills of [i]nformation." *Id.* at 21. Therefore, Appellant contends that because he was "unaware of the charges against him[,]" he is entitled to a new trial. *Id.* at 22.

The Commonwealth responds that the PCRA court "correctly determined that [Appellant] failed to establish that his defense was actually compromised by the absence of bills of information." Commonwealth's Brief at 17. Although Appellant argues that he was prejudiced based on the Commonwealth's failure to identify specific dates for the offenses, the Commonwealth argues that "[t]he dates were immaterial to the defense because [Appellant] did not

dispute having gone to a hotel with A.S., hosted the boy at his home on numerous occasions, or [that he] spent time with M.O. and her siblings" and, instead, "he denied the allegations of sexual molestation during those otherwise admitted interactions." *Id.* at 17-18.

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted). Further, "we may affirm the PCRA court's decision on any basis." *Commonwealth v. Charleston*, 94 A.3d 1012, 1028 (Pa. Super. 2014) (citation omitted).

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffective assistance of counsel, a defendant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted).

The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.* (citation omitted). Moreover, "[a] failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

The prejudice standard for an ineffectiveness claim is a higher standard than the harmless error analysis typically applied when assessing allegations of trial court errors. *See Commonwealth v. Gribble*, 863 A.2d 455, 472 (Pa. 2004). Instead, a petitioner must prove "actual prejudice," which our Supreme Court has defined as follows:

> [A] reasonable probability that, but for counsel's lapse, the result of the ... proceeding would have been different. In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding [was] unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Commonwealth v. Crispell*, 193 A.3d 919, 932 (Pa. 2018) (citations and quotation marks omitted).

"[A] criminal information satisfies the constitutional requirements, under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, that a defendant be given formal, specific notice of the charged crimes." *Commonwealth v. Nischan*, 928 A.2d 349, 356 (Pa. Super. 2007). Further, the criminal information "sets the stage for trial and what the Commonwealth intends to prove." *Commonwealth v. King*, 234 A.3d 549, 563 (Pa. 2020); *see also Commonwealth v. Conaway*, 105 A.3d 755, 764 (Pa. Super. 2014) (reiterating that the purpose of an information "is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act" (citation omitted)); *see generally* Pa.R.Crim.P. 560. However, a defendant may receive *de facto* notice of charges through other means, such as factual summaries that are included in the charging documents. *King*, 234 A.3d at 566.

With respect to the alleged dates of an offense, this Court has explained:

> It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty." The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. However, "due process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. *See* Pa.R.Crim.P. 560(B)(3) (stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations). Case law has further

"established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa. Super. 2007). This is especially true when the case involves sexual offenses against a child victim.

*Commonwealth v. Riggle*, 119 A.3d 1058, 1069-70 (Pa. Super. 2015)

(some citations omitted).

Here, the PCRA court addressed Appellant's claim as follows:

Although bills of information were not filed in this case, the criminal complaints provided Appellant with sufficient notice of the crimes alleged against him. The criminal complaint relating to M.O. described incidents of sexual abuse by Appellant and included (1) the approximate date of the alleged crimes ("on or about Monday, January 01, 1996"); (2) the name of the complainant (M.O.); (3) the specific allegations that "[Appellant] solicited then-ten-year-old [M.O.] ... to engage in sexual intercourse .... [Appellant] also had indecent contact with [M.O.] when he would rub her breasts and vagina with his hands over top of her clothing;" and (4) charged Appellant with solicitation to commit rape, unlawful contact with a minor, solicitation to commit sexual assault, corruption of minors, and indecent assault. Appellant received more detailed notice of these same allegations from the preliminary hearing, where M.O. described instances of sexual abuse that began when she was "nine or ten." *See* N.T. 11/1/11 at 29-39.

Moreover, the facts and charges outlined in the complaint are, although less detailed, nearly identical to the crimes charged and facts presented at trial. *See* N.T. 6/23/14 at 12-13 (Appellant was charged with and pled "not guilty" to solicitation to commit rape, solicitation to commit statutory sexual assault, corruption of minors, and indecent assault.); N.T. 6/24/14 at 8-16, 27-31 (On more than one occasion, beginning around 1996 when M.O. was about eleven years old, Appellant fondled her over her clothing. On a different occasion, Appellant offered M.O. money to engage in sexual intercourse with him).

Similarly, the complaint relating to A.S. detailed an incident of sexual abuse and included the approximate date of the incident

("on or about Friday, January 01, 2010"); the name of the Complainant (A.S.); and included the allegation that Appellant "had indecent contact with ... [A.S.] when [he] pulled [A.S.'s] pants down as [A.S.] was sleeping and rubb[ed] his penis." The complaint also listed the charges of unlawful contact with a minor, endangering the welfare of a child, corruption of minors, and indecent assault. Although the complaint only detailed one instance of sexual abuse by Appellant, the details of Appellant's other offenses and the related charges were outlined at his initial arraignment, again at the preliminary hearing, and again at the start of trial. **See** N.T. 11/1/11 at 4-6 (preliminary hearing amending charges to include rape, IDSI, statutory sexual assault, and sexual assault and detailing episodes of sexual abuse that began in 2009 or 2010); N.T. 6/23/14 at 11-13 (Appellant's "not guilty" pleas to all offenses charged). Further, A.S. testified to the same three episodes of sexual abuse at the preliminary hearing and at trial, which included two allegations that Appellant rubbed A.S.'s penis as he slept and one allegation that A.S. awoke to Appellant performing oral sex on him. N.T. 11/1/11 at 9-12; N.T. 6/23/14 at 50-59. Thus, Appellant has no basis to claim that he was unfairly surprised at trial or that notice of his charges were so lacking in specificity that he was unable to prepare an adequate defense.

PCRA Ct. Op. at 8-9.

Based on our review of the record, we discern no abuse of discretion or error of law in the PCRA court's conclusions. **See Ousley**, 21 A.3d at 1242. As noted by the PCRA court, the criminal complaint fully informed Appellant of the charges against him, including the names of the victims, the details underlying each allegation of abuse, and the approximate dates of the offenses.[5] **See** Trial Ct. Op. at 8-9. Further, Appellant has failed to explain

---

[5] To the extent Appellant claims that he is entitled to relief because the Commonwealth failed to provide the exact dates on which the offenses occurred, that assertion is meritless. **See Riggle**, 119 A.3d at 1069-70 (stating that the Commonwealth is not always required to prove that an

*(Footnote Continued Next Page)*

how the absence of a criminal information affected his ability to prepare a defense. Under these circumstances, Appellant cannot establish that he suffered actual prejudice based on trial counsel's failure to seek dismissal of the charges. *See Crispell*, 193 A.3d at 932. Therefore, Appellant is not entitled to relief. *See id.*

### Jury Instruction – Failure to Define Reasonable Doubt

In his second issue, Appellant argues that trial counsel was ineffective for failing to object when the trial court omitted the definition of reasonable doubt from its final charge to the jury. Appellant's Brief at 22.

By way of background to this claim, on the first day of trial, the trial court gave opening instructions, which included a definition of reasonable doubt. *See* N.T. Trial, 6/23/14 at 14-15. Specifically, the trial court stated:

> The charges brought against the defendant are accusations. They are not proof that a defendant is guilty.
>
> A fundamental principle of our law is that you must presume the defendant is innocent. This means that you are to accept that the mere fact that he is charged with a crime does not mean that he is guilty of it.
>
> He begins this case with a clean slate and he has no obligation to prove his innocence. Rather it is the Commonwealth must convince you that based on a fair consideration of all of the evidence that will be offered, each element of the offenses charged have been proven beyond a reasonable doubt.
>
> To succeed in this effort, the Commonwealth must convince you that based on a fair consideration of all of the evidence that will

alleged crime occurred on a specific date, particularly in matters involving sexual abuse of a child).

be offered, each element of the offenses charged have been proven beyond a reasonable doubt.

A reasonable doubt is a doubt that would cause a reasonably careful[,] a sensible person[,] to pause, hesitate or refrain from acting upon a matter of the highest importance in his or her own affairs.

A reasonable doubt must be a real doubt. It may not be an imagined one, nor a doubt manufactured to avoid carrying out an unpleasant duty.

*Id.*

After the jury trial ended two days later, the trial court gave a final charge to the jury. *See* N.T. Trial, 6/25/14, at 1-32. The trial court did not repeat the definition of reasonable doubt. However, the trial court reiterated that Appellant had the presumption of innocence "unless and until you conclude, based upon careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt of the charges made against him." *Id.* at 8-9. Further, the trial court repeatedly stated that it was the Commonwealth's burden to prove each element of every crime beyond a reasonable doubt. *See id.* at 17-24.

On appeal, Appellant claims that trial counsel was ineffective for failing to object when the trial court omitted the definition of "reasonable doubt" from its final jury instructions. Appellant's Brief at 22. Appellant argues that although the trial court defined "reasonable doubt" during its opening instructions, that definition was improper because the trial court did not use

the definition provided by the Pennsylvania Standard Jury Instructions.[6] *Id.* at 23. Further, he asserts that the initial instruction on reasonable doubt was insufficient because "the trial court did not tell the jury that the opening instructions and final instructions were to be read in conjunction[, t]he reasonable doubt charge was not sent back with the jury[,]" and reasonable doubt was not defined during closing instructions. *Id.* at 37. Further, he claims that it "cannot be assumed beyond a reasonable doubt that the jurors would continue to have in mind the preliminary admonitions given by the [trial c]ourt at the beginning of the trial, when they completed their deliberations days later." *Id.* at 38.

Appellant asserts that he was "greatly prejudiced" by the trial court's failure to define reasonable doubt in its final instructions because it "resulted in a jury deciding [A]ppellant's guilt without any guidance on its responsibility to convict only if it found [A]ppellant guilty, as the Constitution requires, beyond a reasonable doubt." *Id.* at 29. Appellant argues that "[t]he impact that the reasonable doubt standard bears on the ultimate resolution of a defendant's guilt or innocence, the omission of an essential portion of a charge on reasonable doubt deprived [A]ppellant of a fair trial and resulted in prejudice." *Id.* at 38. Therefore, Appellant claims that trial counsel's failure

---

[6] Specifically, Appellant claims that the trial court improperly added "A reasonable doubt is a doubt that would cause a reasonably careful[,] a sensible person[,] to pause, hesitate or refrain from acting upon a matter of the highest importance in his or her own affairs." Appellant's Brief at 23.

to object was "ineffective, *per se* and clearly and indelibility affected the jury's deliberations." *Id.* at 30.

The Commonwealth responds that the "the instructions as a whole correctly charged the jury on reasonable doubt" because the trial court included the definition of reasonable doubt in its preliminary instruction to the jury. Commonwealth's Brief at 22. The Commonwealth also notes that "the trial court again emphasized the Commonwealth's burden of proving [Appellant's] guilt beyond a reasonable doubt" in its final jury charge and when defining the elements of each crime. *Id.* at 23. Therefore, when read as a whole, the Commonwealth contends that the trial court's instruction on reasonable doubt did not violate Appellant's due process rights. *Id.* at 24.

In reviewing a challenge to jury instructions,

> our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006); *see also Commonwealth v. Sattazahn*, 952 A.2d 640, 668 n.20 (Pa. 2008) (noting that trial courts have wide latitude when crafting jury instructions).

Further, with respect to reasonable doubt, this Court has explained:

> The defense has an absolute right to have the jury instructed as to the quantum of proof required to establish guilt.  To that end, the trial court must provide the jury with a positive instruction fully and accurately defining that burden, *i.e.*, "beyond a reasonable doubt."  ***Commonwealth v. Young***, 317 A.2d 258, 260 (Pa. 1974) (defendant was denied a fair trial because the trial court gave the jury no guidance on the meaning of "beyond a reasonable doubt"); [*see also*] ***Sullivan v. Louisiana***, 508 U.S. 275 (1993) (a constitutionally deficient jury instruction in a criminal case as to the definition of reasonable doubt, for purposes of the prosecution's burden of proving guilt beyond a reasonable doubt, is not amenable to harmless error analysis and will always invalidate a conviction).

***Commonwealth v. Clark***, 683 A.2d 901, 906 (Pa. Super. 2006) (some citations omitted).

> The United States Supreme Court has held that

> in the case of a structural error where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to "automatic reversal" regardless of the error's actual "effect on the outcome."

> The question then becomes what showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim.  To obtain relief on the basis of ineffective assistance of counsel, the defendant as a general rule bears the burden to meet two standards.  First, the defendant must show deficient performance—that the attorney's error was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Second, the defendant must show that the attorney's error "prejudiced the defense."

***Weaver v. Massachusetts***, 137 S. Ct. 1899, 1910 (2017) (citations omitted); *see also **Commonwealth v. Isaac***, 205 A.3d 358, 365-66 (Pa. Super. 2019) (reiterating that "an error that would invalidate a conviction on direct appeal need not necessarily do so on collateral review" and noting that,

consistent with **Weaver**, our Supreme Court has held that "the absence of harmless error for purposes of direct appeal does not equate to presumed prejudice on collateral review").

In sum, where a petitioner claims that counsel was ineffective for failing to object to a structural error, the petitioner must establish actual prejudice. *See Isaac*, 205 A.3d at 365-66 (explaining that the presumption of prejudice applicable to a structural error on direct appeal is different from the prejudice that a PCRA petitioner must prove when raising an ineffectiveness claim); *see also Commonwealth v. Cox*, 863 A.2d 536, 549 (Pa. 2004) (rejecting the petitioner's claim that counsel was ineffective for failing to object to an erroneous reasonable doubt instruction where the petitioner failed to establish "a reasonable probability that, but for counsel's alleged error, his verdict would have been different"); *see generally Turetsky*, 925 A.2d at 880 (noting that a petitioner must show a reasonable probability that counsel's objection to the challenged jury instruction would have led to a more favorable outcome).

Here, the PCRA court addressed Appellant's claim as follows:

> This court's reasonable doubt instruction, in its entirety, closely parallels the style and substance of the generally accepted charge articulated in *Commonwealth v. Roane*, 142 A.3d 79, 97 (Pa. Super. 2016). Both jury instructions refer to a defendant's presumption of innocence, the Commonwealth's burden to prove each element beyond a reasonable doubt, and the requisite level of doubt that would cause a person to pause, restrain, or refrain from making a decision in an important, personal matter. *See id.*
>
> Moreover, a cursory comparison of the Suggested Instructions and this court's instructions clearly demonstrates that this court's definition of reasonable doubt, as a whole, is nearly identical in form and substance to the Suggested Instructions: The Suggested

Instructions define "reasonable doubt" as "a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs." Pa. SSJI (Crim), § 7.01(3). This court's preliminary charge defined the term as "a doubt that would cause a reasonably careful[,] a sensible person to pause, hesitate, or refrain[fn1] from acting upon a matter of the highest importance in his or her own affairs." N.T. Trial, 6/23/14, 14-15.

> [fn1] Appellant claims that this court's inclusion of the words "pause," "refrain," and "the highest" was "inappropriate and change[d] the meaning of the definition." However, the Supreme Court of Pennsylvania has upheld virtually identical language for "nearly five decades." ***Commonwealth v. Jones***, 912 A.2d 268, 287 (Pa. 2006) (upholding the trial court's addition of the words "pause" and "restrain" to standard jury instruction for reasonable doubt). It is immaterial that this court used the word "refrain," rather than "restrain." Per merriam-webster.com/dictionary, to "refrain" is "to keep oneself from doing, feeling, or indulging in something and especially from following a passing impulse." To "restrain" is to "prevent from doing, exhibiting, or expressing something." ***Id.*** The words are synonymous.

The Suggested Instructions further explain, "[a] reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime." Pa. SSJI (Crim), § 7.01(3). Although this court did not use this exact language, this court clearly informed the jury that the Commonwealth bore the burden of proving, "based on [the jury's] fair consideration of all the evidence . . . each element of the offenses . . . beyond a reasonable doubt." N.T. Trial, 6/23/14, at 14; N.T. Trial, 6/25/14, at 8-9) ("[I]t is the Commonwealth that always [bears] the burden of proving each and every element of the crimes charged that the defendant is guilty of those charges beyond a reasonable doubt").

The Suggested Instructions continue, "[a] reasonable doubt must be a real doubt; it may not be an imagined one, nor may it be a doubt manufactured to avoid carrying out an unpleasant duty." Pa. SSJI (Crim), § 7.01(3). Similarly, this court stated, "[a] reasonable doubt must be a real doubt. It may not be an imagined one, nor a doubt manufactured to avoid carrying out an unpleasant duty." N.T. Trial, 6/23/14, 15).

Accordingly, this court's charges on reasonable doubt, when read in their entirety, clearly and accurately instructed the jury on reasonable doubt. Therefore, trial counsel had no basis to object to the charge and cannot be deemed ineffective for failing to do so.

PCRA Ct. Op. at 10-15.

Initially, we agree with Appellant that it may have been preferable for the trial court to provide a definition of reasonable doubt during its closing instructions. However, as noted by the PCRA court, the trial court accurately defined reasonable doubt in its opening instruction to the jury.[7] **_See_**

---

[7] Incidentally, the subcommittee note for preliminary and orientation jury instructions states that "judges have wide latitude concerning what should be covered in the preliminary and orientation instructions. . . The subcommittee recommends giving all appropriate instructions in this chapter in an effort to provide thorough guidance to the jury. These orientation instructions, like all instructions, are part of a connected series." Pa. SSJI (Crim), § 2.00.

The note further provides:

"Preliminary instruction supplies jurors with the appropriate frameworks and rules for making sense of evidence, helping them to avoid the use of subjective or idiosyncratic ideas about the legal process that they bring with them into court." In short, substantive preliminary instructions can help jurors do their job better.

Using orientation instructions more extensively may provide an additional benefit. If certain instructions are provided early, not only will jurors be able to use that framework to better understand the evidence they are about to hear, but the final instructions may also be shorter and more focused. Briefer and more directed final instructions may allow jurors to concentrate more effectively and thus understand the instructions as a whole more fully. In short, orientation instructions have the potential to improve the quality of justice.

*(Footnote Continued Next Page)*

*Sattazahn*, 952 A.2d at 668 n.20; *see also Commonwealth v. Daniels*, 963 A.2d 409, 429 (Pa. 2009) (stating that an "instruction will not be found in error if, taken as a whole, it adequately and accurately set forth the applicable law"). There is no reason to conclude that the jury disregarded that definition when it began deliberations two days later. *See Commonwealth v. Flor*, 998 A.2d 606, 632 (Pa. 2010) (stating that the jury is presumed to have followed the trial court's instructions). Under these circumstances, we conclude that Appellant failed to establish that the trial court's omission during the final charge prejudiced him in such a way that that the outcome of the trial would have been different but for trial counsel's failure to object. *See Turetsky*, 925 A.2d at 880. Therefore, Appellant is not entitled to relief. *See Cox*, 863 A.2d at 549; *see also Charleston*, 94 A.3d at 1028 (stating that we may affirm the PCRA court on any basis).

## Jury Instruction – Corruption of Minors

In his final claim, Appellant argues that trial counsel was ineffective for failing to object to the trial court's instruction on corruption of minors. Appellant's Brief at 39.

By way of background to this claim, Section 15.6301A of Pennsylvania's Standard Jury Instructions sets forth the standard charge for corruption of minors as follows:

_____

*Id.*

1. The defendant has been charged with corrupting a minor. To find the defendant guilty of this offense, you must find that each of the following three elements has been proven beyond a reasonable doubt:

> *First*, that the defendant was 18 years of age or older at the time of the incident giving rise to the charge;
>
> *Second*, that [*name of minor*] was under 18 years of age at that time; and
>
> *Third*, that the defendant:
>
>> [a. aided, abetted, enticed, or encouraged [*name of minor*] to commit the crime of [crime];
>>
>> [or] b. knowingly assisted or encouraged [*name of minor*] in violating [[his] [her] parole] [an order of court to [*action*]];
>>
>> [or] c. corrupted or tended to corrupt the morals of [*name of minor*] by the following alleged conduct: [*alleged conduct*].]

[*Instruction applicable only as to subdivision b of the third element above when evidence places in dispute defendant's knowledge of minor's parole or court order status:*]

2. The evidence gives rise to a question as to whether the defendant knew of the [parole conditions] [court order] affecting [*circumstance*]. The Commonwealth must prove beyond a reasonable doubt that the defendant knew of such [conditions] [court order] at the time [he] [she] allegedly assisted or encouraged [*name of minor*] to take actions that would violate it. The Commonwealth must prove:

> *First*, that the defendant was 18 years of age or older at the time of the incident giving rise to the charge;
>
> *Second*, that [*name of minor*] was under 18 years of age at that time; and
>
> [*Third*,
>
> a. that the defendant engaged in a course of conduct that constituted the following sexual offenses under the Crimes Code of Pennsylvania: [*specify offenses*], and

> b. that by that conduct, the defendant corrupted or tended to corrupt the morals of a minor, [*name of minor*].]
>
> OR
>
> [*Third*, that the defendant aided, abetted, enticed, or encouraged [*name of minor*] to commit the offense of [*specify*].]

Pa. SSJI (Crim), § 15.6301A (some formatting altered).

At trial, the trial court instructed the jury on corruption of minors as follows:

> [Appellant] has been charged with corruption of a minor. To find the defendant guilty of this offense, you must find that each of the following three elements has been proven beyond a reasonable doubt.
>
> First that [Appellant] was 18 years of age or older at the time of the incident.
>
> Second, that the complainant, [A.S. and M.O.] were under the age of 18.
>
> Third that [Appellant] aided, abetted, enticed, or encouraged the minor to commit the crime or knowingly assisted or encouraged the minor to commit the crime or corrupted or tended to corrupt the morals of the minor following the alleged conduct.
>
> The evidence gives rise to whether the defendant knew that [Appellant] engaged in a course of conduct that constituted the following sexual offenses under the Crimes Code of Pennsylvania and that the defendant corrupted or tended to corrupt the morals of a minor.

N.T. Trial, 6/25/14, 24-25 (formatting altered).

- 20 -

During deliberations, the jury asked the trial court to repeat the elements that were required for each charge.[8] **See** N.T. Trial, 6/25/14, at 35. Shortly thereafter, the jury asked the trial court to clarify the following points on corruption of minors: (1) whether the act of oral sex with a minor was "an example of encouraging the commission of a crime;" (2) to define the term "corruption," and (3) whether the phrase "corrupting the morals" would only apply to "making the minor commit a crime" and if a minor is "part of committing the crime if the adult has sex with [the] minor." N.T. Trial, 6/25/14, at 39. In response, the trial court re-instructed the jury on corruption of minors with the above-quoted instruction. **See id.**

On appeal, Appellant argues that the trial court erred by instructing the jury on all three sections of Section 15.6301(1), and counsel was ineffective in failing to object. Appellant's Brief at 43. In support, Appellant claims:

> For instance, the allegation was not that [Appellant] helped either minor A.S. or M.O. to commit any crime Section 15.6301(1)(a); likewise, the allegation was not that [Appellant] helped either minor A.S. or M.O. to violate any court order Section 15.6301(1)(b). Lastly, when the court read the last portion of section 15.6301(1)(c), it failed to define what the alleged conduct was that was complained of Section 15.6301(1)(c). Clearly, all three (3) subparagraphs were not applicable[.]

---

[8] The jury also asked the trial court to explain the difference between the charges for criminal solicitation—rape and criminal solicitation—statutory sexual assault, neither of which are at issue in this appeal. **See** N.T. Trial, 6/25/14, at 35.

*Id.* Additionally, he argues that the trial court erred by failing to insert the names of the victims when defining subsection (c) because he was charged with committing the offense against two separate victims. *Id.* at 44.

Appellant also asserts that the trial court erred by reading the charge at Section 15.6301(2), because "[t]he Commonwealth did not allege a 'course of conduct' nor did they proceed under that theory. Moreover, this was not included on the verdict sheet." *Id.*

Under these circumstances, Appellant concludes that corruption of minors charge was "misleading," because it contained language that was "patently unnecessary" and not just "technically inaccurate, [but] wholly inaccurate." *Id.* at 44. He contends that counsel's failure "to appreciate [and] recognize the improper nature of the charge was ineffective and the failure to correct it, prejudicial." *Id.* In sum, Appellant concludes that he was "prejudiced by his counsel's failure to object [and] by the [c]ourt's inartful reading of the jury charge" because "[t]he jury was given entirely too much information and irrelevant information for their consideration to [find Appellant] guilty as to both M.O. and A.S." *Id.* at 44.

The Commonwealth responds that the instruction "may have conveyed to the jurors that the Commonwealth was obligated to prove more than was in actuality required—*e.g.*, by referring to a "course of conduct" or a "crime" by the victim—[which] hardly inured to the benefit of the prosecution." Commonwealth's Brief at 30. Instead, the Commonwealth argues that any error "advantaged the defense by suggesting that the Commonwealth bore a

burden greater than the law imposed." *Id.* Therefore, the Commonwealth argues that "trial counsel cannot be deemed ineffective for not objecting to phrasing that accurately conveyed the elements of the offense and did not result in any actual prejudice." *Id.*

Relevant to our review of Appellant's claim, we note that "[i]t has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. 2014). However, "[t]he trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Commonwealth v. Hornberger*, 74 A.3d 279, 283 (Pa. Super. 2013). Further, our Supreme Court has stated that "even if an instruction is erroneous, relief is due only when the error is prejudicial." *Commonwealth v. Veon*, 150 A.3d 435, 444 (Pa. 2016).

Here, in rejecting Appellant's claim that trial counsel was ineffective for failing to object to this instruction, the PCRA court explained:

> Although Appellant was not accused of "aiding, abetting, enticing or encouraging a minor to commit a crime" or "assisting or encouraging a minor to violate parole or an order of court," there is no reason to believe that this superfluous—and clearly inapplicable—language confused the jury. A "technical inaccuracy" in a jury charge which "nevertheless adequately, accurately, and clearly" instructed the jury on the law, does not constitute reversible error. *Commonwealth v. Zewe*, 663 A.2d 195, 201 (Pa. Super. 1995); *Commonwealth v. Calderini*, 611 A.2d 206, 210 (Pa. Super. 1992) (finding the trial court's "wholly

- 23 -

superfluous" charge did not constitute reversible error). Thus, Appellant's underlying claim has no merit, and he is not entitled to PCRA relief.

PCRA Ct. Op. at 22-23.

Based on our review of the record, we conclude that the trial court erred by instructing the jury on subsections of the corruption of minors charge that were inapplicable to Appellant's case. *See Buterbaugh*, 91 A.3d at 1257. We also disagree with the PCRA court's characterization of this error as a mere "technical inaccuracy." *See e.g. Commonwealth v. Trill*, 543 A.2d 1106, 1113-1114 (Pa. Super. 1988) (addressing a defendant's claim that the word "not" should have been omitted from one of the charges to the jury). Further, the jury's question about the elements required for corruption of minors demonstrates that the trial court's superfluous instructions muddled the jury's understanding of what was required for that offense. *See* N.T. Trial, 6/24/14, at 39 (reflecting the jury's confusion regarding the evidence required to establish the "commission of a crime" element of subsection (a), which was inapplicable to Appellant's case).

However, the record reflects that at trial, both victims testified at length concerning the abuse by Appellant. As fact-finder, the jury was free to believe all, part, or none of the evidence, including the victims' testimony. *See Commonwealth v. Leaner*, 202 A.3d 749, 768, (Pa. Super. 2019). Further, in addition to convicting Appellant of both counts of corruption of minors, the jury also found Appellant guilty of unlawful contact with a minor, rape, IDSI, statutory sexual assault, and sexual assault as to A.S. and indecent assault

as to M.O. In this case, it is evident that the jury found the complainants' testimony credible, and that the trial evidence, including their testimony, provided overwhelming evidence to establish that Appellant engaged in conduct that tended to or actually did corrupt the morals of the minor victims. **See** 18 Pa.C.S. § 6301(a)(1)(i). Therefore, Appellant cannot establish that he was prejudiced by the trial court's erroneous instruction on corruption of minors. **See Veon**, 150 A.3d at 444 (stating that "even if an instruction is erroneous, relief is due only when the error is prejudicial"). Therefore, Appellant's ineffectiveness claim fails. **See id; see also Daniels**, 963 A.2d at 419. Accordingly, we affirm. **See Charleston**, 94 A.3d at 1028 (stating that "we may affirm the PCRA court's decision on any basis").

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/28/2021*